IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BASIC RESEARCH,<br><br>　　　Plaintiff,<br><br><br><br><br>　　　　　vs.<br><br><br>BDIRECT, et al.,<br><br>　　　Defendants. | MEMORANDUM DECISION AND ORDER DENYING IN PART AND GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br><br><br><br><br>Case No. 2:06-CV-932 TS |

This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment.[1] This motion is fully briefed.  For the reasons discussed below, the Court will grant in part and deny in part Plaintiff's motion.

I.　　　Background Facts

Plaintiff Basic Research ("Basic") is the exclusive distributor of a variety of health and beauty products, including a number of nationally known diet products.  Defendant Bdirect ("Bdirect") is a broker that promotes the sale and use of products to various retail outlets across the country.  Defendant Team Direct, LLC ("Team Direct") is also a broker that provides similar

---

[1]Docket No. 50.

1

services for Basic's competitors.  Defendant Noah Bremen ("Bremen") is the president of Bdirect and an investor and part-owner of Team Direct.[2]  Defendant Gary Alecusan ("Alecusan") is president and part-owner of Team Direct.  John Edgmon ("Edgmon") was employed by Bdirect but is now employed by Basic.  Alecusan and Team Direct have been dismissed.[3]

Basic and Bdirect first contracted in 2003 for Bdirect to be the national, master broker for Basic's products.  That contract lapsed and was renegotiated in 2005 ("the 2005 Agreement"). Under both agreements, Bdirect was appointed as Basic's exclusive representative to introduce and promote Basic's products to certain retailers, including Wal-Mart and Sam's Club.  The agreements contained confidentiality clauses that prohibited the disclosure of non-public, proprietary and other confidential information.  The 2005 Agreement also authorized Bdirect "to engage any person or entity, whether as an employee, independent contractor, subcontractor, agent, sales representative or in any other relationship, to assist Bdirect in its performance of this Agreement."[4]  The 2005 Agreement contained a choice of law provision that indicated Utah law would govern the contract.[5]  Both agreements identified the relationship between Basic and Bdirect as an independent contractor relationship.

The 2005 Agreement expired on December 31, 2005, but the parties continued to do business under substantially the same terms as included in the 2005 Agreement.  The parties

---

[2]Aff. Noah Bremen at ¶¶ 3-4 (Docket No. 66).

[3]Docket No. 59.

[4]Mem. in Supp. of Pl.'s Mot. for Partial Summ. J. at ¶ 19 (Docket No. 51).

[5]*Id*. at ¶ 21.

communicated often via email over the course of their relationship.  A confidentiality notice was

included in at least some of the emails sent from Basic to Bdirect.  These emails contained

> information concerning Basic's marketing programs, plans for the introduction of
> new products, the timing for implementing such plans, pricing information for
> Basic's products, discounts and promotions offered, information about Basic's
> business methods and processes, product placement results, and information
> concerning the success of particular marketing strategies as they related to Wal-
> Mart and Sam's Club.[6]

 John Edgmon worked to coordinate the sale of the products that Basic distributes to

Sam's Club and Wal-Mart in Bdirect's Arkansas office, which was located within Team Direct's

office space.  Team Direct is a broker for Iovate Health Sciences, a distributor of Hydroxycut.  In

a March 31, 2006 email, Bdirect indicated that Iovate and its Hydroxycut product posed a threat

to Basic.[7]

In the spring of 2006, Basic learned that Bremen was also an investor and owner of Team

Direct.  Bdirect asked Basic "to continue to place trust and confidence in Bdirect and its

services."[8]  While employed at Bdirect, Edgmon sent a blind electronic copy of "certain

communications between Basic and Bdirect to Gary Alecusan."[9]

II.     Procedural History

Basic filed suit in this court on November 2, 2006, requesting declaratory relief regarding

the deduction of allegedly overpaid commissions.[10]  Basic indicated in their Complaint that

---

[6]*Id*. at ¶ 30.

[7]*Id*. at ¶ 34.

[8]*Id*. at ¶ 27.

[9]*Id*. at ¶ 37.

[10]Docket No. 1.

additional claims may be raised after an investigation and that an amended complaint would be filed.  Basic did so, asserting thirteen claims: (1) declaratory relief against Bdirect and Bremen relating to alleged unpaid commissions; (2) violation of the Wire and Electronic Communication Interception Act, 18 U.S.C. § 2510, against all Defendants; (3) violation of Interception and Communications Act, Utah Code Ann. § 77-23(a)-1, against all Defendants; (4) violation of Uniform Trade Secrets Act, Utah Code Ann. § 13-24-1, et seq., against all Defendants; (5) violation of Arkansas Trade Secrets Act, Arkansas Code Ann. § 4-75-601, et seq., against all Defendants; (6) civil conspiracy; (7) breach of contract; (8) breach of implied contract, against Bdirect and Bremen; (9) breach of covenant of good faith and fair dealing, against Bdirect and Bremen; (10) fraud and fraudulent concealment, against Bdirect and Bremen; (11) intentional interference with prospective economic relations, against Bdirect and Bremen; (12) breach of fiduciary duty, against Bdirect and Bremen; and (13) negligent misrepresentation.[11]

The next day, Bdirect filed suit against Basic in California, asserting fourteen causes of action: (1) violation of the California Independent Wholesale Sales Representatives Contractual Relations Act of 1990, Cal. Civ. Code § 1738.10 et seq. - failure to state in writing in the parties' September 29, 2003 contract what chargebacks would be made against commissions, if any; (2) violation of California Independent Wholesale Sales Representatives Contractual Relations Act of 1990, Cal. Civ. Code § 1738.10 et seq. - failure to state in writing in the parties' January 16, 2005 contract what chargebacks would be made against commissions, if any; (3) violation of California Independent Wholesale Sales Representatives Contractual Relations Act of 1990, Cal. Civ. Code § 1738.10 et seq. - failure to enter into a written contract after the expiration of the

---

[11]Docket No. 7 (First Am. Compl.).

parties' January 16, 2005 contract; (4) violation of California Independent Wholesale Sales Representatives Contractual Relations Act of 1990, Cal. Civ. Code § 1738.10 et seq. - failure to state in writing after the expiration of the parties' January 16, 2005 contract what chargebacks would be made against commissions, if any; (5) breach of oral contract; (6) procuring cause doctrine; (7) intentional interference with contractual relations; (8) intentional interference with prospective economic advantage; (9) fraud/misrepresentation; (10) breach of implied covenant of good faith and fair dealing; (11) violation of California Business and Professions Code, Cal. Bus. & Prof. Code § 17200 et seq.; (12) quantum meruit; (13) unjust enrichment; and (14) declaratory judgment.  That case was transferred to the District of Utah as Case No. 2:07-CV-98 TS on February 9, 2007, and consolidated with this case on May 15, 2007.[12]  In the consolidation order, parties stipulated that the claims in Case No. 2:07-CV-98 would be counterclaims in this consolidated case.

Basic filed its motion for partial summary judgment[13] on July 3, 2007, which was fully briefed on September 7, 2007.  Defendants Alecusan and Team Direct were dismissed for lack of jurisdiction by this Court on August 2, 2007.[14]  On September 26, 2007, Basic filed a Second Amended Complaint[15] that included Alecusan and Team Direct as Defendants.  That motion added one additional cause of action (breach of fiduciary duty and duty of loyalty, against Team Direct, Bremen and Alecusan).  The instant motion for partial summary judgment is based on the

---

[12]Docket No. 42.

[13]Docket No. 50.

[14]Docket No. 59.

[15]Docket No. 89.

First Amended Complaint with only Bdirect and Bremen remaining as defendants.  Basic seeks

summary judgment on its own claims 1, 7, 8, and 9 and on Bdirect's counterclaims 1 - 6, and 12

- 14.  Basic's Claims 7, 8 and 9 are all based on the alleged breach of contract with respect to the

disclosure of confidential information.  Bdirect's Claims 1 - 4 are all statutory claims premised

on the California Wholesale Representatives Act and commissions that Bdirect asserts they are

owed by Basic.  Basic's Claim 1 and Bdirect's Claims 5, 6, and 12 - 14 are claims related to the

commissions allegedly due to Bdirect.

III.    Discussion

Summary judgment is proper if the moving party can demonstrate that there is no genuine

issue of material fact and it is entitled to judgment as a matter of law.[16]  In considering whether

genuine issues of material fact exist, the Court determines whether a reasonable jury could return

a verdict for the nonmoving party in the face of all the evidence presented.[17]  The Court is

required to construe all facts and reasonable inferences in the light most favorable to the

nonmoving party.[18]

A.    Breach of Contract Claims - Confidentiality Clause

Basic asserts that Bdirect breached its confidentiality obligations to Basic while the 2005

Agreement was in effect, by disclosing confidential and proprietary information to Alecusan, the

broker for Basic's competitor, Iovate.  Basic further argues that even though the 2005 Agreement

---

[16]*See* Fed. R. Civ. P. 56(c).

[17]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[18]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

6

has lapsed, the confidentiality clause in that agreement continues to be in force and the relationship between Basic and Bdirect gave rise to fiduciary-like duties that forbade disclosure of confidential information.  Basic asserts that the disclosure of confidential information damaged Basic because several of its products failed to perform as projected.  Bdirect argues that the 2005 Agreement gave it broad discretion in the performance of its obligations and that any disclosure that occurred was for the benefit of Basic.  Bdirect denies disclosing confidential or proprietary information, but Bdirect does admit to disclosing "daily activity and sales movement reports."[19]

The elements of a breach of contract claim include: (1) the existence of a contract; (2) performance by the party claiming breach; (3) nonperformance of the contract by the other party to the contract; and (4) damages.[20]

In this case, the existence of the 2003 and 2005 Agreements are not disputed and Bdirect does not argue that Basic did not perform its obligations under the contract with respect to disclosure.  The 2005 Agreement contains two clauses that discuss confidentiality.  First, the contract states:

> The receiving party [Bdirect] agrees to hold in confidence and not to disclose or reveal to any person or entity any Confidential Information disclosed in connection with each party's performance of this Agreement.  The receiving party [Bdirect] further agrees not to use or disclose any of the Confidential Information for any purpose at any time, other than for the limited purpose(s) of this confidence.[21]

---

[19]Def.'s Response at 6 (Docket No. 64).

[20]*White Family Harmony Inv., Ltd. v. Transwestern W. Valley, LLC.*, 2007 WL 2821798, *3 (D. Utah 2007) (citing *Mackey v. Cannon*, 996 P.2d 1081, 1085 (Utah Ct. App. 2000)).

[21]Pl.'s Mem in Supp. of Mot. for Partial Summ. J. at ¶ 18 (Docket No. 51).

The 2005 Agreement also authorized Bdirect to "engage any person or entity . . . to assist Bdirect in its performance of this Agreement."[22]

The Court finds that sufficient issues of material fact exist as to whether the information disclosed to Alecusan was, in fact, confidential.  Therefore, summary judgment at this stage on the breach of contract claims is improper.

        B.      California Act

Four of Bdirect's counterclaims (Claims 1 - 4) are premised on a California statute, the California Independent Wholesale Sales Representative Contractual Relations Act of 1990 ("the Act").[23]  Basic contends that this statute does not apply on its face due to a choice of law provision contained in the 2003 and 2005 Agreements, the Act violates the Commerce Clause and that, in any event, Bdirect's breach precludes liability for Basic under the Act.  Bdirect argues that the unclean hands doctrine does not bar recovery for Bdirect's common law or statutory claims, the Act does not violate the Commerce Clause and that the Act does apply to this Agreement because Bdirect placed products with accounts in California such as Long's and Safeway.

Both the 2003 and 2005 Agreements contained a choice of law provision designating Utah as the forum state for disputes arising from these agreements.  With respect to the time frame after the 2005 Agreement expired, the Court applies the conflict of laws rules of Utah, the forum state.[24]  Utah has adopted the "most significant relationship" test set out in Section 188 of

---

[22]*Id*. at ¶ 19.

[23]Cal. Civ. Code § 1738.10, *et seq*.

[24]*Mountain Fuel Supply v. Reliance Ins. Co.*, 933 F.2d 882, 887 (10th Cir. 1991).

the Second Restatement of Conflicts of Laws as the rule to apply to a conflict of laws question in a contract dispute.[25]  Under that test, in the absence of a choice of law provision, courts are to consider the following factors: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicil, residence, nationality, place of incorporation and place of business of the parties.[26]

In this case, much of the communications between Basic and Bdirect took place via email.  Further, Bremen "visited Utah on various occasions during the parties' business dealings."[27]  While the contract dealt with placement of product in retail establishments all over the country, there was no specific designation based on geography.  Bdirect's citation to an email regarding the Southern California Market[28] does not weigh in its favor, as Basic contracted for placement based on retailer, not location, as admitted by Bdirect.[29]  Basic is a Utah corporation with its place of business in Utah.  While Bdirect is a California corporation, the provision in the expired contracts indicates that at some point, both parties agreed to the application of Utah law.  Therefore, the Court will apply Utah law.

The Court finds that analysis of the constitutionality of the Act under the Commerce Clause is unnecessary for purposes of deciding this motion, because the Court finds that the Act

---

[25]*Am. Nat'l Fire Ins. Co. v. Farmers Ins. Exch.*, 927 P.2d 186, 190 (Utah 1999).

[26]Restatement (Second) Conflict of Laws § 188(2).

[27]Defs.' Answer to Am. Compl. at ¶ 14 (Docket No. 40).

[28]Defs.' Resp. Brief at 16-18 (Docket No. 64).

[29]Defs.' Answer to Am. Compl. at ¶ 20 (Docket No. 40).

is not applicable in this case.  Therefore, summary judgment is proper against Bdirect on counterclaims 1 - 4.

        C.     Commissions

Basic argues that Bdirect's unclean hands due to the breach precludes recovery of unpaid commissions.  Bdirect argues that the unclean hands doctrine is not an absolute bar to recovery on either their common law or statutory claims.  As discussed above, the California Act is not applicable in the case, thus the Court will not address it further.  Bdirect further argues that the allegations made by Basic do not show any injury for which relief should be granted.

"Under Utah law, a plaintiff who has engaged in fraud or deceit in the business under consideration will be denied equitable relief "when fairness and good conscience so demand."[30]

In this case, there remains material issues of fact regarding the terms under which Basic and Bdirect operated after the expiration of the 2005 Agreement and whether there was a breach of the contract based upon the disclosure of confidential information.  Thus, summary judgment on Basic's Claim 1 and Bdirect's Claims 5, 6 and 12 - 14, all related to commissions, is inappropriate.

        IV.    Conclusion

The Court finds that issues of material fact remain regarding the nature of the information disclosed to Alecusan.  Therefore, summary judgment in favor of Basic is denied with respect to Basic's Claims 7, 8, and 9.  The Court finds that Utah law governs the agreement and that the California Act is not applicable in this case.  Therefore, summary judgment in favor of Basic is granted with respect to Bdirect's counterclaims 1 - 4.  However, issues of material fact remain

---

[30]*Hone v. Hone*, 95 P.3d 1221, 1223 (Utah 2004) (internal quotations omitted).

regarding the agreement under which Basic and Bdirect operated after the expiration of the 2005 Agreement such that summary judgment on the remaining claims related to commissions that would be due is improper.  It is therefore

ORDERED that Basic's Motion for Summary Judgment (Docket No. 50) be GRANTED in part and DENIED in part.

DATED   December 13, 2007.

BY THE COURT:

_____
TED STEWART
United States District Judge

11